IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| THE PENN TRAFFIC COMPANY, *ET AL.*[1] | § | **Case No. 09-14078 (PJW)** |
| | § | |
| **Debtors.** | § | **Jointly Administered** |
| | § | |
| | § | **Re: D.I. 301** |

**ORDER (A) APPROVING BID PROCEDURES AND SOLICITING BIDS FOR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) APPROVING BREAK-UP FEE TO STALKING HORSE BIDDER, (C) SCHEDULING A HEARING TO CONSIDER THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (D) APPROVING THE FORM AND MANNER OF NOTICE OF AUCTION, (E) ESTABLISHING PROCEDURES FOR NOTICING AND DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS, AND (F) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of The Penn Traffic Company, Sunrise Properties, Inc., Pennway Express, Inc., Penny Curtiss Baking Company, Inc., Big M Supermarkets, Inc., Commander Foods Inc., P and C Food Markets Inc. of Vermont, P.T. Development, LLC, and P.T. Fayetteville/Utica, LLC (collectively, "Penn Traffic" or the "Debtors" or "Merchant"), as debtors in possession, for entry of an order (the "Order") (a) approving the procedures for soliciting bids for substantially all or portions of the Debtors' assets (the "Sale") and/or agent and agency agreement relating to the Sale, (b) approving certain break-up fee and related bid

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: The Penn Traffic Company (6800), Sunrise Properties, Inc. (4868), Pennway Express, Inc. (0863), Penny Curtiss Baking Company, Inc. (6750), Big M Supermarkets, Inc. (8022), Commander Foods Inc. (8023), P and C Food Markets Inc. of Vermont (5531), P.T. Development, LLC (8594), and P.T. Fayetteville/Utica, LLC (8582). The mailing address for all Debtors is: P.O. Box 4737, Syracuse, NY 13221-4737.

[2] Capitalized terms used, but not otherwise defined, herein shall have those meanings ascribed to them in the Motion and the Asset Purchase Agreement attached thereto as **Exhibit C**, and to the extent of any inconsistency, the Asset Purchase Agreement shall govern.

procedure provisions attached hereto as **Exhibit 1** (the "Bid Procedures") of that certain asset purchase agreement dated January 7, 2010 (the "Asset Purchase Agreement") between The Penn Traffic Company and Tops Markets, LLC (the "Stalking Horse Bidder") attached to the Motion as **Exhibit C**, with respect to the Sale by the Stalking Horse Bidder of substantially all the assets of Penn Traffic (the "Acquired Assets"), as more fully set forth in the Asset Purchase Agreement, (c) establishing the date, time and place for a sale hearing (the "Sale Hearing"), (d) approving the form and manner of notice of the sale by auction (the "Sale Notice"), (e) establishing procedures for noticing and determining cure amounts (the "Cure Notice"), and (f) granting related relief.

## THE COURT HEREBY FINDS AND CONCLUDES THAT:[3]

A.  This court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this district and in this court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  The statutory predicates for the relief requested herein are sections 105(a), 363(b) and (f), 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and Rules 2002(a)(2), 6004(a), (b), (c), (e) and (f), 6006(a) and (c), 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

C.  Pursuant to the Cash Collateral Order (as referred to below), this Court has authorized the Debtors to obtain the use of Cash Collateral under Bankruptcy Code section 363,

---

[3] The findings and conclusions set forth herein constitute the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

pursuant to the terms and conditions of that Cash Collateral Order dated November 19, 2009, as amended by orders entered on November 30, 2009, December 8, 2009, and December 22, 2009 and granted by this Court, by and among The Penn Traffic Company, as borrower, Sunrise Properties, Inc., Pennway Express, Inc., Penny Curtiss Baking Company, Inc., Big M Supermarkets, Inc., Commander Foods, Inc., P and C Food Markets, Inc. of Vermont, P.T. Development, LLC, and P.T. Fayetteville/Utica, LLC, as guarantors, and their prepetition lenders, the Debtors have access to cash through use of cash collateral under Bankruptcy Code sections 363 and 361.

D. Notice of the Motion having been given to the Notice Parties (as defined below) is sufficient in light of the circumstances and the nature of the relief requested herein.

E. The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sale process, including, without limitation: (i) approving the Bid Procedures; (ii) scheduling a Sale Hearing; (iii) approving the Sale Notice; and (iv) approving the Cure Notice.

F. The Bid Procedures attached as **Exhibit 1** hereto and requested Bid Protections to be offered to the Stalking Horse Bidder were negotiated in good faith by the Debtors and the Stalking Horse Bidder and are reasonable and appropriate.

G. The requested Break-Up Fee (as defined in the Asset Purchase Agreement) is the product of extensive arms' length negotiations between the Debtors and the Stalking Horse Bidder. Payment of the Break-Up Fee under the circumstances described in the Asset Purchase Agreement is: (i) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of Bankruptcy Code sections 503(b)(1) and 507(a)(2); (ii) commensurate to the real and substantial benefit conferred upon the Debtors' estates by the

Stalking Horse Bidder; (iii) reasonable and appropriate, in light of the size and nature of the proposed sale transaction and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder; and (iv) necessary to induce the Stalking Horse Bidder to continue to pursue the sale transaction and to continue to be bound by the Asset Purchase Agreement.

H. The Break-Up Fee also induced the Stalking Horse Bidder to submit a bid that will serve as a minimum floor bid on which the Debtors, their creditors, and other bidders may rely. The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that Debtors will receive the best possible value for the Acquired Assets. The Bid Procedures, including the Break-Up Fee, are reasonable and appropriate and represent a reasonable method for maximizing value for the benefit of the Debtors' estates.

I. The form of Sale Notice attached hereto as **Exhibit 2** hereto is reasonably calculated to provide all interested parties with timely and proper notice of the Sale, the Sale Hearing, and the Auction.

J. The form of Cure Notice attached hereto as **Exhibit 3** hereto is reasonably calculated to provide all counterparties (the "Contract Parties") to the Debtors' executory contracts and unexpired leases (the "Acquired Contracts") with proper notice of the potential assumption and assignment of their executory contract or unexpired lease and any cure amounts relating thereto.

K. The entry of this Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

IT IS HEREBY ORDERED THAT:

1. The Motion is granted to the extent set forth herein.

2. The Debtors are hereby authorized to enter into and execute the Asset Purchase Agreement and to perform such obligations under the Asset Purchase Agreement as expressly authorized pursuant to this Order.

3. The Asset Purchase Agreement is approved solely to the extent expressly authorized pursuant to this Order.

4. The Bid Procedures attached hereto as **Exhibit 1**, including the scheduling relief requested in the Motion are approved in all respects.

5. The Bid Protections provided in the Motion are approved. Specifically, the Court approves the Break-Up Fee provided for the Stalking Horse Bidder pursuant to the Asset Purchase Agreement.

6. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.

7. The deadline for submitting a Qualified Bid (as such term is defined in the Bid Procedures) shall be January 19, 2010 at 12:00 p.m. (prevailing Eastern Time) (the "Bid Deadline").

8. If the Debtors do not receive any Qualified Bids other than the Stalking Horse Bidder's bid pursuant to the Asset Purchase Agreement, they will not hold an Auction and the Stalking Horse Bidder will be named the Successful Bidder.

9. To the extent at least one Qualified Bid, other than the Stalking Horse Bidder's Bid, is timely received, the Debtors shall conduct an Auction commencing no later than 9:00 a.m. (prevailing Eastern Time) on January 21, 2010 at the offices of Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 18th Floor, Wilmington, Delaware 19801.

10. All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Acquired Assets.

11. The Court shall conduct the Sale Hearing commencing on or before January 25, 2010, at which time the Court will consider approval of the Sale to all Successful Bidders (as such term is defined below) and/or pursuant to the Asset Purchase Agreement or such other agreement representing the highest and best bid therefore at the conclusion of the Auction.

12. Objections, if any, to the proposed Sale, providing for the sale of the Acquired Assets free and clear of liens, claims, encumbrances and interests (including collective bargaining agreements, pension agreements and other labor agreements) pursuant to Bankruptcy Code section 363(f), shall: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); (c) be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, by 4:00 p.m. (prevailing Eastern Time) on January 19, 2010 (the "Objection Deadline"); and (d) be served so as to be received by the Objection Deadline on:

(i) the Debtors, c/o The Penn Traffic Company., 1200 State Fair Blvd., Syracuse NY, 13221, Attn: Ronald F. Stengel;

(ii) counsel to the Debtors, Haynes and Boone, LLP, 1221 Avenue of the Americas, 26th Floor, New York, NY 10020, Attn: Michael E. Foreman and Lenard M. Parkins, and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., P.O. Box 1347, Wilmington, DE 19899-1347, Attn: Gregory W. Werkheiser , Esq.;

(iii) counsel to Tops, Winston & Strawn LLP, 200 Park Avenue, New York, NY 10166, Attn: Dom DeChiara, Esq.;

(iv) counsel to the First Lien Agent, Paul, Hastings, Janofsky & Walker LLP, 75 E. 55th Street, New York, NY 10022, Attn: Leslie Plaskon, Esq., Jesse H. Austin, Esq., and Richards, Layton & Finger, P.A., One Rodney

Square, 920 North King Street, Wilmington, DE 19801, Attn: Mark D. Collins, Esq.;

(v) counsel to Second Lien Agent, Greenberg Traurig, LLP, One International Plaza Boston, MA 02110, Attn: Jeff M. Wolf, Esq., and Donald J. Detweiler;

(vi) counsel to the Official Committee of Unsecured Creditors, Otterbourg, Steindler, Houston & Rosen, P.C. 230 Park Avenue, New York, New York, 10169-0075, Attn: Scott L. Hazan, Esq. and Jenette A. Barrow-Bosshart, Esq.; and

(vii) the Office of the United States Trustee (the "U.S. Trustee"), 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Pat Tinker, Esq.

(the "Objection Service Parties").

13. Objections to the proposed assumption and assignment of Acquired Contracts, including but not limited to the proposed Cure Amounts, and/or adequate assurance of future performance shall: (a) be in writing; (b) state with specificity the cure amount that the Contract Party believes is required and/or the adequate assurance of future performance that the Contract Party believes is required; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, by January 19, 2010 at 4:00 p.m. (prevailing Eastern Time); and (e) be served so as to be received by January 19, 2010 at 4:00 p.m. (prevailing Eastern Time) by the Objection Service Parties; provided, however, that in the event the Auction results in a Successful Bidder other than the Stalking Horse Bidder, the deadline for objecting to the assignment of executory contracts and unexpired leases to a Successful Bidder shall be the commencement of the Sale Hearing.

14. Unless an objection to the assumption and assignment of an Acquired Contract is filed and served before January 19, 2010 at 4:00 p.m. (prevailing Eastern Time), all Contract Parties to the Acquired Contracts shall: (a) be forever barred from objecting to the proposed Cure

N-29661 7

Amounts and from asserting any additional cure, damages or other amounts with respect to the Acquired Contracts, and the Debtors and Stalking Horse Bidder (or any Successful Bidder) shall be entitled to rely solely upon the proposed Cure Amounts set forth in the Cure Notices; (b) be deemed to have consented to the assumption and assignment; and (c) be forever barred and estopped from asserting or claiming against the Debtors or Stalking Horse Bidder (or any Successful Bidder) that any other defaults exist, that conditions to assignment must be satisfied under such Acquired Contracts or that there is any objection or defense to the assumption and assignment of such Acquired Contracts.

15. If a nondebtor Contract Party to an Acquired Contract files an objection asserting a cure amount higher than the proposed Cure Amounts (the "Disputed Cure Amount"), then (a) to the extent that the parties are able to consensually resolve the Disputed Cure Amount prior to the Sale Hearing, and subject to the consent of the Stalking Horse Bidder (or any Successful Bidder) of such consensual resolution, the Debtors shall promptly provide the Committee and the Stalking Horse Bidder (or any Successful Bidder) notice and opportunity to object to such proposed resolution, or (b) to the extent the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then such objection will be heard at the Sale Hearing. Pending a ruling on such objection, if not made at the Sale Hearing, the amount necessary will be reserved and paid upon entry of an order determining the correct cure amount and will be paid as provided in the Asset Purchase Agreement. All other objections to the proposed assumption and assignment of an Acquired Contract will be heard at the Sale Hearing.

16. Until the Debtors are directed to assume and assign an executory contract and the sale order is entered, no executory contract or unexpired lease will become an Acquired Contract in favor of the Stalking Horse Bidder or other Successful Bidder, as applicable.

17. All objections to the relief requested in the Motion with respect to the Bid Procedures that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled except as otherwise set forth herein.

18. Any Break-Up Fee that becomes payable under the Asset Purchase Agreement and this Order shall constitute a superpriority claim with priority over any and all administrative expenses of the kind specified in Bankruptcy Code section 503(b) and 507(b).

19. The disposition of the Good Faith Deposit provided by the Successful Bidder, in the event of breach or default by the Successful Bidder, shall be as set forth in section 2.2 of the Asset Purchase Agreement and as set forth in the Bid Procedures.

20. The Sale of the Acquired Assets is consistent with Bankruptcy Code section 363(b)(1)(A) and the Debtors' privacy policy, and no consumer privacy ombudsman is necessary in connection with the Sale.

21. The Stalking Horse Bidder shall have standing to appear and be heard with respect to the selection of an alternative agent and/or bidder or bidders, the Break-Up Fee and Auction.

22. The Sale Notice attached hereto as **Exhibit 2** is approved.

23. The Cure Notice attached hereto as **Exhibit 3** is approved.

24. Within three (3) business days of this order, the Debtors shall serve by first class mail, postage prepaid, copies of: (a) this Order; (b) the Motion; (c) the Sale Notice; and (d) the Cure Notice, upon the following entities: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Prepetition Lender Agents; (iv) counsel to the First Lien; (v) counsel to the Second Lien Agent; (vi) all taxing authorities having jurisdiction over any of the Acquired Assets subject

to the sale, including the Internal Revenue Service; (v) the Environmental Protection Agency; (vii) the state/local environmental agencies in the jurisdictions where the Debtors own or lease real property; (viii) all parties that have requested notice pursuant to Bankruptcy Rule 2002; (ix) all persons or entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Acquired Assets; (x) counsel to the Stalking Horse Bidder; and (xi) all potential bidders for the Acquired Assets previously identified or otherwise known to the Debtors, (collectively, the "Notice Parties").

25. A Qualified Potential Bidder that desires to make a Bid shall comply with the requirements set forth in the Bid Procedures in making such a bid, including, without limitation, the requirement that it deliver written copies of its bid so as to be received not later than 12:00 p.m. (prevailing Eastern Time) on January 19, 2010 (the "Bid Deadline") by the following: (i) the Debtors, c/o The Penn Traffic Company, 1200 State Fair Blvd., Syracuse, NY 13221, Attn: Ronald F. Stengel; (ii) counsel to the Debtors, Haynes and Boone, LLP, 1221 Avenue of the Americas, 26th Floor, New York, NY 10020, Attn: Michael E. Foreman and Lenard M. Parkins, and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., P.O. Box 1347, Wilmington, DE 19899-1347, Attn: Gregory W. Werkheiser, Esq; (iii) Winston & Strawn LLP, 200 Park Avenue, New York, NY 10166, Attn: Dom DeChiara, Esq.; (iv) counsel to the First Lien Agent, Paul, Hastings, Janofsky & Walker LLP, 75 E. 55th Street, New York, NY 10022, Attn: Leslie Plaskon, Esq., Jesse H. Austin, Esq., and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Mark D. Collins, Esq.; (v) counsel to the Second Lien Agent, Greenberg Traurig, LLP, One International Plaza Boston, MA 02110, Attn: Jeff M. Wolf, Esq., and Donald J. Detweiler (vi) counsel to the Committee, Otterbourg,

Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, NY 10169-0075, Attn: Scott Hazan, Esq. and Jenette A. Barrow-Bosshart, Esq.

26. Not later than January 20, 2010 at 4:00 p.m. (prevailing Eastern Time), the Debtors will notify all Qualified Potential Bidders of (i) the highest or otherwise best Qualified Bid (the "Baseline Bid") and (ii) the time and place of the Auction, and provide copies of all Qualified Bids to all Qualified Potential Bidders.

27. In accordance with Local Rule 6004-1(c), in connection with the Auction, (a) each bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, (b) subject to the terms of the Bid Procedures, the Auction will be conducted openly and all creditors will be permitted to attend provided that advance written notice is given to counsel for the Debtors; and (c) bidding at the Auction will be transcribed or videotaped in a manner determined by the Debtors.

28. Upon conclusion of the bidding, the Auction shall be closed, and Debtors, in consultation with the Committee, shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, and (ii) immediately identify the highest or otherwise best offer or offers (each a "Successful Bid" and the entity or entities submitting such Successful Bid(s), each a "Successful Bidder").

29. The Debtors will be deemed to have accepted any Successful Bid only when the Bid has been approved by the Court at the Sale Hearing. Such hearing is to be held before the Honorable Peter J. Walsh, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, at 824 Market Street, 5th Floor, Courtroom No. 6, Wilmington, Delaware 19801 on January 25, 2010 at 11:30 a.m. (prevailing Eastern Time).

30. Notwithstanding the possible applicability of Federal Rules of Bankruptcy Procedure 6004(h), 7062, 9014 or otherwise, this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

31. This Order shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

32. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

33. The Debtors are authorized to take all actions necessary to implement this Order.

34. This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order and the Bid Procedures.

Dated: January 8, 2010
Wilmington, Delaware

_____
THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE