**EXHIBIT 1**

## AGREEMENT

This **AGREEMENT** (this "Agreement"), dated as of January 7, 2010, is by and among Tops Markets, LLC, a New York limited liability company ("Tops Markets"), C&S Wholesale Grocers, Inc., a Vermont corporation ("C&S"), and The Penn Traffic Company ("Penn Traffic"), a Delaware corporation, for itself and on behalf of the Debtors herein identified.

**WHEREAS,** Tops Markets and C&S are party to a Supply Agreement, dated as of November 12, 2009 (the "Existing Agreement");

**WHEREAS,** on November 18, 2009 (the "Petition Date"), The Penn Traffic Company ("Penn Traffic"), Sunrise Properties, Inc., Pennway Express, Inc., Penny Curtiss Baking Company, Inc., Big M Supermarkets, Inc. ("Big M"), Commander Foods Inc., P and C Food Markets Inc. of Vermont, P.T. Development, LLC and P.T. Fayetteville/Utica, LLC (collectively, the "Debtors"), commenced their reorganization cases by filing voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and all of the Debtors' cases have been consolidated for administrative purposes only under Case No. 09-14078 (the "Bankruptcy Case");

**WHEREAS,** Tops Markets and its assignees (collectively, "Tops") has made a proposal to the Debtors to purchase substantially all of the assets of the Debtors (the "Proposed Transaction");

**WHEREAS,** C&S has asserted various pre-petition non-priority unsecured claims against the Debtors identified in Schedule A hereto (the "C&S Claims") pursuant to the following agreements between C&S and the Debtors: (i) the Transition Services Agreement, dated as of December 21, 2008, among C&S, Penn Traffic and Big M (the "C&S TSA"); (ii) the Third Party Logistics Agreement, dated as of December 21, 2008, between C&S and Penn Traffic (the "3PL"); (iii) the Amended and Restated Penn Traffic Company Supply Agreement, dated as of September 10, 2008, between C&S and Penn Traffic, as amended by the First Amendment to Amended and Restated Penn Traffic Company Supply Agreement, dated as of December 21, 2008, between C&S and Penn Traffic (as amended, the "Mainline Supply Agreement"); and (iv) the Supply Agreement, dated January 24, 2007 by and between Penn Traffic and C&S, as amended by that certain First Amendment to Supply Agreement dated December 21, 2008 (the "GMHBC Supply Agreement", and, collectively with the Mainline Supply Agreement, the C&S TSA, the 3PL and the Asset Purchase Agreement, dated as of December 17, 2008, among C&S, Penn Traffic and Big M (the "APA"), the "C&S/Penn Traffic Agreements"). The Mainline Supply Agreement and the GMHBC Supply Agreement are together referred to herein as the "Supply Agreements".

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.  Conditions to Effectiveness of this Agreement. This Agreement shall become effective on the occurrence of (a) entry of a final order, not subject to appeal, by the Bankruptcy Court approving the Proposed Transaction (the "Sale Order"), and (b) the consummation of the Proposed Transaction containing the required terms and conditions set forth in this Agreement (the "Closing").

2.  Agreements by Tops and the Debtors. On the terms and subject to the conditions set forth herein, each of Tops and the Debtors hereby agrees, as to itself only:

    (a)    [intentionally omitted]

    (b)    Following the Closing, at C&S's option, Tops shall permit C&S to (or shall arrange for C&S to), at C&S's sole cost and expense, use the transportation equipment acquired by Tops pursuant to the Proposed Transaction (which may be utilized, at C&S's option, by C&S's employees, contractors, agents or representatives), including, but not limited to, all trucks, trailers and other related equipment (collectively, the "DuBois Transportation Equipment"), related to the DuBois Warehouse for up to thirty (30) days following the Closing. To the extent C&S exercises this option, C&S shall be responsible for any and all costs, expenses, liabilities and obligations related to the operation of the DuBois Transportation Equipment or any damage thereto or loss thereof, and in furtherance thereof, C&S shall indemnify and hold Tops harmless from and against any loss, liability, claim, damage or expense (including costs of investigation and defense and reasonable attorneys' fees and expenses), whether or not involving a third party claim ("Losses"), to the extent arising from or in connection with the use or operation of the DuBois Transportation Equipment or any damage thereto or loss thereof from and after the Closing.

    (c)    The Proposed Transaction shall include the following terms and conditions:

        (1)    As of the later of (x) March 1, 2010 or (y) 30 days following the Closing, whether as the result of a partial rejection, amendment, or otherwise of the Lease Agreement, dated as of April 18, 2005, between Equity Industrial PT Limited Partnership and the Debtors (the "Lease Agreement"), the Debtors shall not be party to any lease relating to the Debtors' warehouse located in DuBois, Pennsylvania (the "DuBois Warehouse"). The Debtors shall move to reject, amend or otherwise modify the Lease Agreement to the extent related to the DuBois Warehouse in connection with the approval of the Tops/Penn Traffic APA (as defined below). The Debtors shall not move to reject, assume or otherwise modify the Lease Agreement with respect to the Debtors' warehouse located in Syracuse, NY (the "Syracuse Facility") such that any such rejection would be effective prior to the end of the 60-day period following the Closing. The Debtors' obligations under this Section 2(c)(1) are conditioned upon the landlord under the Lease Agreement providing all necessary consents necessary to give

effect to the provisions hereof. Until the date on which the Debtors are no longer a tenant of the DuBois Warehouse, all employees at the DuBois Warehouse shall remain employees of the Debtors. The Debtors will provide to Tops and C&S all of the services required to be provided by Penn Traffic and/or Big M pursuant to the C&S TSA and the 3PL as of the date hereof for a period of not less 30 days following the Closing. By the end of the 30-day period following the Closing, C&S shall have transferred its independent customers serviced from the Syracuse Facility to the DuBois Warehouse, and the applicable corporate stores of Debtors will be transitioned to other C&S facilities, such that, thereafter, there would be no further shipments of product to stores from the Syracuse Facility. By the end of the 60-day period following the Closing, any remaining C&S product will be removed and re-located as directed by C&S. The Debtors and C&S will seek to use existing Penn Traffic employees at the Syracuse Facility with respect to such activity, if possible.

(2)     The Debtors shall submit a motion to the Bankruptcy Court to reject the C&S TSA effective as of the Closing, and reject the 3PL effective on the date that is 30 days following the Closing. The Debtors shall not assume the Supply Agreements, but shall not reject the Supply Agreements until the later of (A) the expiration of the 60-day period following the Closing, or (B) the expiration of the 30-day period following the expiration or termination of the TSA; *provided*, that all of C&S's inventory, as applicable, shall be removed from the Debtors' facilities prior to such date. It is anticipated that such inventory removal shall be completed before the end of the 60-day period following the Closing.

(3)     As of the Closing, Tops will enter into a Transition Services Agreement with the Debtors (the "TSA"), which will provide, at a minimum, that the Debtors will provide to Tops and C&S (i) all of the services required to be provided by Penn Traffic and/or Big M pursuant to the C&S TSA as of the date hereof for a period of not less 30 days following the Closing, and (ii) all of the information technology related services required to be provided by Penn Traffic and/or Big M pursuant to the C&S TSA as of the date hereof for a period of not less than less 60 days following the Closing. The Debtors shall be responsible for all obligations under the TSA to C&S. The TSA will provide that C&S is party to whom the Debtors have a duty to perform the services to be provided under the TSA and that C&S is an intended beneficiary of such services. Notwithstanding the foregoing, no pre-petition claims of C&S under the C&S TSA and/or the 3PL shall be converted to a post-petition or administrative claim solely as a

result of the entry into the Debtors of this Agreement or the performance of its obligations hereunder or under the TSA. The parties will use commercially reasonable efforts to adhere to the timeline of activity set forth in Schedule 2(c)-3 attached hereto. Furthermore, any claims against the Debtors' estates by C&S arising from the Debtors' failure to perform under this Agreement (except for and excluding claims relating to or arising out of the Debtors' obligations to transfer, convey and deliver the Dubois Assets (defined below) and the Designation Rights (defined below), and the IT and IT Equipment to Tops) shall have the same priority as any claims arising from the Debtors' failure to perform under the C&S/Penn Traffic Agreements would be entitled to as if this Agreement had never been entered into by the parties.

(4)     At the Closing and pursuant to the Tops/Penn Traffic APA and Sale Order, the Debtors will transfer, convey and deliver to C&S, as Tops' designee (pursuant to a bill of sale executed by the Debtors and/or such other documentation reasonably required by C&S in accordance with Section 5(b) hereof), all of the Debtors' assets located at the DuBois Warehouse and otherwise used by Debtors in connection with the operations at the Dubois Warehouse, including without limitation, the Debtors' rights, title and interests in and to the assets listed on Schedule 2(c)-(4) attached hereto, but excluding the DuBois Transportation Equipment (collectively, the "DuBois Assets"), and all other furniture, fixtures, equipment and other personal property including, but not limited to, racks, trade fixtures, machinery, tools, furniture, equipment, refrigeration units, computer equipment, applications, systems, motor vehicles, rolling stock, replacement parts, intangible assets, including, but not limited to, any substitutions or replacements of any of the above, that may occur within the ordinary course of business made between the date hereof and the Closing, located at, used with respect to or related to the DuBois Warehouse, other than the DuBois Transportation Equipment (collectively, the "Equipment"); and all of the Debtors' right, title and interest in and to all manufacturers' warranties to the extent related to the Equipment and all claims under such warranties, in each case, free and clear of all liens, rights, interests, encumbrances and claims of third parties, other than the Permitted Encumbrances (as defined below).

(5)     The purchase by Tops of all of the Debtors' owned intellectual property related to Debtors' information technology, which shall include without limitation, any intellectual property, data, reports and any other information related to the operations, provision of services and sales related to C&S and/or sales or services to C&S's

independent wholesale customers, including without limitation, any intellectual property, data (including all historical data), reports or information related to merchandising, planograms, sales, promotional data, invoicing, purchase reporting, reportsafe data and tax reporting (the "IT"), including the right to license such IT to C&S on a non-exclusive basis. At the Closing, the Debtors shall provide a copy or copies of the IT at Tops' or C&S's request. The Debtors shall not assume and assign, reject, sell or otherwise transfer any of the IT until the Closing.

(6) The purchase by Tops of all of the Debtors' information technology equipment (the "IT Equipment") used in connection with the services provided pursuant to the C&S TSA and/or the 3PL.

(7) C&S shall have the sole and exclusive right until the date that is 60 days following the Closing to direct the Debtors to assume and assign to C&S or C&S's designee, free and clear of all liens, rights, interests, encumbrances and claims (other than the permitted encumbrances set forth on Schedule 3.2(b) of the Tops/Penn Traffic APA (the "Permitted Encumbrances", which are identified on Schedule 2(c)-7-A attached hereto)), or reject, the Debtors' rights, title and interests in and to the leases (the "Store Leases") listed on the attached Schedule 2(c)-7-B[1] (collectively, the "Designation Rights"). Prior to the end of the 60-day period following the Closing, C&S will indicate to Debtors, at one time in writing (the "Designation Notice"), the manner in which it has elected to exercise its Designation Rights with respect to each of the Store Leases. If C&S exercised its Designation Rights, the Debtors shall file a motion, in a form reasonably satisfactory to C&S and consistent with C&S's exercise of its Designation Rights, within five (5) business days after receiving the Designation Notice.

(8) The Debtors shall provide C&S with access to the DuBois Warehouse as soon as possible following the date on which Penn Traffic and Tops enter into the Tops/Penn Traffic APA to install C&S's equipment and otherwise set up operations at C&S's sole cost and expense, it being understood by C&S that the Debtors may be unable to permit any actual installation until the approval by the Bankruptcy Court of the Proposed Transaction, and any failure of the Debtors to comply with this provision shall not be deemed a breach hereof as a result thereof.

---

[1] **Subject to review of Schedule.**

(9)     The Tops/Penn Traffic APA will provide that: (x) with respect to the sale of the Dubois Assets (including Equipment) and IT, and the obligations described in Sections 2(c)(1), (2), (3), (7) and (8), as a remedy for the Debtors' failure to perform their obligations under the Tops/Penn Traffic APA with respect thereto, Tops may seek injunctive relief for specific performance by the Debtors to effectuate the foregoing transactions; and (y) a covenant that Debtors will not take any action that would adversely affect in any material respect any of C&S's Designation Rights, including, but not limited to failure to timely perform all post-petition obligations under the Store Leases.

(10)    The provisions, findings and orders contemplated by the Tops/Penn Traffic APA to be included in the Sale Order as they relate to the Acquired Assets (as defined in the Tops/Penn Traffic APA) shall apply to the DuBois Assets (including Equipment) and the Designation Rights (the "C&S Assets") in substantially the same manner as they apply to the Acquired Assets.

(d)     At the Closing, Tops will grant C&S a royalty-free, non-exclusive perpetual license to use, and provide C&S a copy of (including all code), all of the IT acquired by Tops from Debtors pursuant to the Proposed Transaction (the "IT Assets Licenses"); *provided*, that to the extent C&S requires any third party software or licenses to maintain, run or otherwise use the IT in addition to the IT Assets Licenses, C&S shall be solely responsible for obtaining any such third party software or licenses, at its sole cost and expense. Other than as contemplated by this Agreement and the Tops/Penn Traffic APA, the Debtors shall not be required to take any action with regard to Tops' obligations to C&S described in this Section 2(d).

(e)     **REDACTED**.

(f)     Notwithstanding anything set forth herein to the contrary (i) Tops shall not have any liability to C&S for any breach by any Debtor, or failure of any Debtor to perform, its obligations hereunder, under the Tops/Penn Traffic APA, the TSA, any other agreement or otherwise, (ii) Tops shall not have any liability to any Debtor for any breach by C&S, or failure of C&S to perform, its obligations hereunder, under the Tops/Penn Traffic APA, the TSA, any other agreement or otherwise, (iii) C&S shall not have any liability to Tops for any breach by any Debtor, or failure of any Debtor to perform, its obligations hereunder, under the Tops/Penn Traffic APA, the TSA, any other agreement or otherwise, (iv) C&S shall not have any liability to any Debtor for any breach by Tops, or failure of Tops to perform, its obligations hereunder, under the Tops/Penn Traffic APA, the TSA, any other agreement or otherwise, (v) no Debtor shall have any liability to Tops for any breach by C&S, or failure of C&S to perform, its obligations hereunder, under the Tops/Penn Traffic APA, the TSA, any other agreement or otherwise and (vi) no Debtor shall have any liability to C&S for any breach by Tops, or failure of Tops to perform, its obligations hereunder, under the Tops/Penn Traffic APA, the TSA, any other agreement or otherwise.

3. <u>Agreements by C&S</u>. On the terms and subject to the conditions set forth herein, C&S hereby agrees:

(a) Capitalized terms used and not otherwise defined in this Section 3(a) shall have the meanings set forth in the Existing Agreement. Notwithstanding anything set forth in Section 3.2 of the Existing Agreement, the stores identified on <u>Schedule 3(a)</u> (the "<u>New Stores</u>") and each other store acquire by Tops pursuant to the Proposed Transaction shall constitute "<u>Tops Stores</u>" and "<u>Stores</u>" for purposes of the Existing Agreement, and C&S will provide the Services and the Other Services under the Existing Agreement to the New Stores and to each other store acquired by Tops pursuant to the Proposed Transaction to the same extent as though such New Stores and other acquired stores were originally listed on Exhibit 3.2 to the Existing Agreement. To the extent <u>Schedule 3(a)</u> is required to be filed with the Bankruptcy Court, it shall be filed under seal with the Bankruptcy Court, and neither C&S nor the Debtors nor any of their respective agents or representatives shall, without Tops' prior written consent, disclose the information set forth on <u>Schedule 3(a)</u> unless otherwise required by law or by the Bankruptcy Court.

**REDACTED**

(b) C&S acknowledges and agrees that Tops will not request the Debtors to assume, and the Debtors will not assume and assign to Tops, and Tops shall not assume or otherwise have any obligations under, the C&S/Penn Traffic Agreements in connection with the Proposed Transaction or otherwise, and that the C&S/Penn Traffic Agreements have and will have no force or effect as against Tops.

(c) C&S agrees to reduce the asserted amount of the C&S Claims **[REDACTED]**, and in furtherance thereof, to execute documents reasonably necessary to effectuate this Agreement. In connection with the foregoing reduction, C&S agrees not to assert any claims arising under the C&S TSA and 3PL in excess of **[REDACTED]**. In the event Penn Traffic shall fail to perform any material obligation to C&S under this Agreement, C&S shall provide written notice of such breach and an opportunity to cure. Such cure period shall be five (5) days after providing written notice of such breach to Debtors and their counsel and counsel to the Official Committee of Unsecured Creditors. In the event that any material default by Penn Traffic under this Agreement is with respect to services provided under the 3PL or C&S TSA and which is not cured within the applicable cure period, which default results in C&S's loss of a customer, then in that event, C&S's 3PL and C&S TSA claims shall not be subject to the **[REDACTED]** limitation set forth herein and the **[REDACTED]** reduction shall be of no force or effect.

(d) Notwithstanding anything set forth herein to the contrary, C&S agrees and acknowledges that neither Tops nor the Debtors shall have any liability to C&S for any failure to perform or breach by the other of any of its or their respective obligations, as the case may be, under the asset purchase agreement providing for the Proposed Transaction (the "<u>Tops/Penn Traffic APA</u>"), the TSA or any other obligation of the Debtors or Tops to the other under any other agreement or otherwise.

(e)     The representations and warranties of the Debtors in the Tops/Penn Traffic APA, as they relate to the C&S Assets and the IT, shall be, and hereby are incorporated herein by reference as made directly by the Debtors to C&S hereunder as of the date hereof. None of such representations and covenants will survive the Closing.

(f)     C&S shall indemnify the Debtors for any Losses arising from or related to C&S's access to the DuBois Warehouse between the period from the entry by the parties into the Tops/Penn Traffic APA and the Closing.

(g)     Tops shall be responsible for all amounts payable to the Debtors under the TSA with respect to all Transition Services (as defined in the TSA) provided thereunder to the extent provided therein except as provided in this Section 3(g). Following the expiration of the 30-day period following the Closing, to the extent that Tops wishes to terminate any Transition Services that do not relate to information technology and C&S wishes that such Transition Services continue, C&S shall thereafter be responsible for all amounts payable to the Debtors under the TSA in respect thereof, and shall reimburse Tops for such amounts promptly, but in any event not later than 10 days, following Tops' request therefor. Following the expiration of the 60-day period following the Closing, to the extent that Tops wishes to terminate any Transition Services that relate to information technology and C&S wishes that such Transition Services continue, C&S shall thereafter be responsible for all amounts payable to the Debtors under the TSA in respect thereof, and shall reimburse Tops for such amounts promptly, but in any event not later than 10 days, following Tops' request therefor.

4.     C&S Claims. For the avoidance of doubt, C&S Claims (as defined in the fourth "Whereas" clause of this Agreement) do not include any secured, priority or administrative claims C&S may have against one or more of the Debtors. In addition, C&S Claims shall not include the following: (i) claims related to product supplied by C&S; (ii) any lost or damaged product; (iii) any and all costs and expenses incurred by C&S in connection with the transfer of C&S inventory to C&S facilities; (iv) any trust fund amounts or other amounts that are due and payable by the Debtors under any of the C&S/Penn Traffic Agreements as of the date the applicable C&S/Penn Traffic Agreement is rejected by a final order, not subject to appeal, of the Bankruptcy Court; and (v) any claims by C&S arising under the TSA or this Agreement. C&S reserves the right to assert or file any such claims described in this Section 4, and any other claims it may have against one or more of the Debtors. Notwithstanding the foregoing or anything set forth herein to the contrary, nothing set forth in this Agreement (including the Schedules and Exhibits hereto) shall prejudice any party from objecting to the C&S Claims.

5.     Miscellaneous

(a)     Publicity. Any public announcement or similar publicity with respect to this Agreement, the Tops/Penn Traffic APA, the Proposed Transaction, the TSA or the transactions contemplated hereby or thereby will be issued, if at all, at such time and in such manner as C&S, the Debtors and Tops collectively determine. Unless consented to by the other party in advance or required by applicable law, the terms of Tops' debt instruments or by the rules of any stock exchange, prior to the Closing, each party hereto shall keep this Agreement,

including, without limitation, the Exhibits and Schedules hereto, strictly confidential and may not make any disclosure of this Agreement or such Exhibits or Schedules to any person or entity, other than the Debtors and their representatives, subject to disclosures that are required to be made in connection with the Bankruptcy Case.

(b)     Further Assurances.  The parties agree to execute and deliver to each other such other documents and amendments to existing agreements (without limitation, the Existing Agreement), and to do such other acts and things, all as another party may reasonably request for the purpose of carrying out the intent of this Agreement.  The provisions of this Agreement providing for the sale to C&S of the Dubois Assets and Equipment, and the transfer of the Designation Rights free and clear of liens, claims, encumbrances and interests, shall be self-executing, and the Debtors, Tops and C&S shall not be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Agreement.  However, the Debtors, Tops and C&S, and each of their respective officers, employees and agents are hereby directed, authorized and empowered to take, and shall take, all actions and execute and deliver any and all documents and instruments that any of the Debtors, Tops or C&S deems reasonably necessary or appropriate to implement and effectuate the terms of this Agreement; specifically, C&S shall have the right to require the Debtors and Tops to execute any documents reasonably required for the transfer of the DuBois Assets and Equipment and the Designation Rights at Closing, and the granting of the IT Assets Licenses, including but not limited to bills of sale, licenses and assumption and assignment agreements.

(c)     Expenses.  Each party to this Agreement will bear its respective expenses incurred in connection with the preparation, execution and performance of this Agreement, including all fees and expenses of agents, representatives, counsel and accountants.

(d)     Notices.  Any demand, notice or other communication to be given in connection with this Agreement shall be in writing and shall be given by personal delivery, by overnight courier, by registered mail or by facsimile or electronic means of communication addressed to the recipient at the address set forth below or to such other address, individual or electronic communication number as may be designated by notice given by either party to the other.  Any demand, notice or other communication shall be conclusively deemed to have been given (i) on the day of actual delivery if given by personal delivery; (ii) on the next business day if given by overnight courier; (iii) on the third business day following deposit in the mail if given by registered mail; and (iv) on the day of transmittal if given by facsimile or electronic communication during the normal business hours of the recipient and on the next following business day if not given during such hours on any day.

If to C&S:

C&S Wholesale Grocers, Inc.
7 Corporate Drive
Keene, NH 03431
Attn: Richard B. Cohen, Chairman and Chief Executive Officer
Phone: (603) 354-4601

Fax: (603) 354-4692

with a copy to:

Michael Newbold, Vice President
Phone: (603) 354-5885
Fax: (603) 354-4694

If to Tops:

Tops Markets, LLC
P.O. Box 1027
Buffalo, NY 14240-1027
Attention: Frank Curci, Chief Executive Officer
Phone:  (716) 635-5124
Fax:  (716) 635-5102

and to:

Kevin Darrington, Chief Financial Officer
Phone:  (716) 635-5170
Fax:  (716) 635-5107

with a copy to:

Morgan Stanley Capital Partners V U.S. Holdco, LLC
1585 Broadway, Floor 29
New York, New York  10036
Attention:  Gary S. Matthews
Phone:  (212) 761-4737
Fax:  (201) 214-6371
and to:

Winston & Strawn LLP
200 Park Avenue
New York, New York  10166
Attention:  Dominick P. DeChiara, Esq.
Phone:  (212) 209-2609
Fax:  (212) 294-4700

If to the Debtors:

The Penn Traffic Company
1200 State Fair Blvd.
Syracuse, NY  13221
Attn:  Ronald F. Stengel, Chief Restructuring Officer

Telecopy No.

with a copy to:

Haynes and Boone, LLP
1221 Avenue of the Americas, 26th Floor
New York, NY 10020
Attn: Michael E. Foreman
       Lenard Parkins
Telecopy No. (212) 918-8989

If to counsel to Official Committee of Unsecured Creditors:

Otterbourg, Steindler, Houston & Rosen, P.C.
230 Park Avenue
New York, NY 10169
Attn: Scott L. Hazan
       Jenette A. Barrow-Bosshart


(e)     Entire Agreement and Amendments.  This Agreement and the other agreements referenced herein supersede all prior agreements among the parties with respect to its subject matter and constitute a complete and exclusive statement of the terms of the agreement between the parties with respect to the subject matter thereof.  This Agreement may not be amended except by a written agreement executed by the party to be charged with the amendment.

(f)     Severability.  If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect.  Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

(g)     Governing Law.  This Agreement shall be governed by the laws of the State of New York, without regard to its conflict of laws provisions, and the laws of The United States of America as applicable in such State.

(h)     Counterparts.  This Agreement may be executed in more than one counterpart, including by facsimile or .pdf transmission, each of which shall be deemed an original, but all of such counterparts together shall be deemed to be one and the same agreement.

* * * * *

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as of the date first written above.

TOPS MARKETS, LLC

By: _____
    Name: Kevin Darrington
    Title: Chief Financial Officer

C&S WHOLESALE GROCERS, INC.

By: _____
    Name:
    Title:

THE PENN TRAFFIC COMPANY

By: _____
    Name:
    Title:

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as of the date first written above.

TOPS MARKETS, LLC

By: _____

     Name:

     Title:

C&S WHOLESALE GROCERS, INC.

By: _____

     Name:

     Title:

THE PENN TRAFFIC COMPANY

By: _____

     Name: Gregory J Young

     Title: President, CEO

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as of the date first written above.

TOPS MARKETS, LLC


By:    _____
              Name:
              Title:

C&S WHOLESALE GROCERS, INC.


By:    _____Michael F. Newbold_____
              Name:  *Michael F. Newbold*
              Title:  *EVP*

THE PENN TRAFFIC COMPANY


By:    _____
              Name:
              Title:

**EXHIBIT 2**

# MEMORANDUM OF AGREEMENT

This AGREEMENT (the "Agreement'), dated as of January 5, 2010, is by and between Tops Markets LLC, a New York limited liability company ("Tops Markets"), The Penn Traffic Company, a Delaware corporation ("Penn Traffic"), United Food and Commercial Workers, Local One ("Local 1"), and the UFCW Local One Pension Fund (the "Plan").

WHEREAS, on November 18, 2009, Penn Traffic, Sunrise Properties, Inc., Pennway Express, Inc., Penny Curtiss Baking Company, Inc., Big M Supermarkets, Inc., Commander Foods Inc., P and C Food Markets Inc. of Vermont, P.T. Development, LLC and P.T. Fayetteville/Utica, LLC (collectively, the "Debtors"), commenced their reorganization cases by filing voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, and all of the Debtors' cases have been consolidated for administrative purposes only under Case No. 09-14078 ("Bankruptcy Case");

WHEREAS, if Debtors cease to have an obligation to contribute to the Plan under their collective bargaining agreements with Local 1 on behalf of 59 stores in Local 1's jurisdiction (the "Current PT Stores"), a complete withdrawal from the Plan will occur and the Debtors will incur withdrawal liability to the Plan (currently estimated to be approximately $50 million if it is incurred in 2009 and approximately $72 million if it is incurred in 2010) and the Plan would become a significant unsecured creditor in the Bankruptcy Case with a likelihood that it would receive a small payment compared to its claim for withdrawal liability;

WHEREAS, Tops Markets (and its assignees) have made a proposal to the Debtors, as outlined in a December 15, 2009 offer letter, to purchase substantially all of the assets of the Debtors (the "Proposed Transaction");

WHEREAS, Local 1 currently represents certain employees of both Tops Markets and Debtors, including those at the Current PT Stores that Tops Markets is considering purchasing from Debtors as part of the Proposed Transaction;

WHEREAS, after closing the Proposed Transaction, Tops Markets will have the obligation to contribute to the Plan for specified employees employed at the Current PT Stores under the terms set forth in the 4204 Agreement (either as employees of Debtors or employees of Tops Markets), and, as part of Tops Markets' process for determining which Current PT Stores it will operate on a going concern basis, some of the Current PT Stores may continue to be operated by Debtors for a transition period;

WHEREAS, all parties agree that it would be in the best interest of Tops Markets, Debtors, Local 1 and the Plan if the Proposed Transaction is structured under Section 4204 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), such that Tops Markets has an obligation to contribute to the Plan for substantially the same number of contribution base units for which the Debtors had an obligation to contribute and the permanent cessation of Debtors' obligation to contribute with respect to the Current PT Stores to the Plan does not result in Debtors' withdrawal from the Plan;

WHEREAS, by this Agreement, Tops Markets and the Debtors formally inform the Plan of their intention that the sale be covered by Section 4204 and hereby seek a variance of the bond/escrow requirement and to demonstrate that the conditions for such variance are met;

1

IT IS NOW HEREBY AGREED TO BY AND BETWEEN THE PARTIES THAT:

1.    Upon the closing of the Proposed Transaction, Debtors' obligation to contribute to the Plan with respect to the Current PT Stores and all other operations shall permanently cease and, pursuant to the separate agreement among Tops Markets, Local 1 and the Plan ("4204 Agreement"):

        a.  Immediately after the closing of the Proposed Transaction, pursuant to the terms hereof, the 4204 Agreement and any collective bargaining agreement between Tops Markets and Local 1 covering the Current PT Stores, Tops Markets shall have an obligation to contribute to the Plan with respect to substantially the same number of contribution base units for which Debtors had an obligation to contribute to the Plan with respect to the Current PT Stores. Notwithstanding the foregoing, if a Current PT Store is closed, sold or the lease is rejected pursuant to the Bankruptcy Case, this obligation by Tops Markets to contribute shall cease for that store immediately upon such closure, sale or lease rejection. Nothing herein shall in any way limit Tops Markets' ability to sell or close or cause the Debtor to reject the lease of any Current PT Stores. Pursuant to the 4204 Agreement, the Plan agrees that the Proposed Transaction will satisfy the requirements of Section 4204(a)(1)(A) of ERISA.

        b.  Pursuant to Section 4204(a)(1)(B) of ERISA, Section 4204(a)(1)(C) of ERISA, Section 4204.11 of the PBGC Regulations and Section 6.3(h) of the Plan's Rules, the Plan will reasonably and in good faith consider granting a variance of any bond/escrow requirement for Tops Markets provided for under Section 4204(a)(1)(B) of ERISA and the sale-contract provision requirement for Debtors provided for under Section 4204(a)(1)(C) of ERISA in connection with the 4204 transaction, pursuant to the criteria set forth in 29 CFR Section 4204.13(a)(2)(ii). If the Plan determines that such variance of any bond/escrow requirement for Tops Markets and/or the sale-contract provision requirement for Debtors will not be granted, and Tops Markets and/or Penn Traffic request such a variance or exemption from the PBGC pursuant to 29 CFR Section 4204.21, the Plan will reasonably and in good faith consider supporting Tops Markets' and/or Penn Traffic's position that the granting of the variance/exemption request (i) would more effectively or equitably carry out the purposes of title IV of ERISA; and (ii) would not significantly increase the risk of financial loss to the Plan.

        c.  Pursuant to Section 4204(a)(3) of ERISA, the Plan will grant a variance of any bond/escrow requirement for Debtors in connection with the 4204 transaction.

        d.  The Plan will not have a claim in the Debtors' Bankruptcy Case for any withdrawal liability that results from the permanent cessation of Debtors' obligation to contribute to the Plan with respect to the Current PT Stores for any reason (including, without limitation, as a result of the Proposed Transaction, assuming the parties' compliance with the provisions of Section 4204). In furtherance thereof, the Plan will agree to the disallowance and expungement of any claim for withdrawal liability it has filed in the Bankruptcy Case if the conditions of the 4204 Agreement are satisfied, by executing a Stipulation and Order substantially in the form and on the terms of Exhibit A.

2.    This Agreement and all of the terms and obligations set forth herein are expressly conditioned on-

        a.  the representations in the 4204 Agreement being true; and

        b.  Tops Markets successfully closing on the Proposed Transaction.

3959/49867-002 Current/17125724v2

3. This Agreement may be executed in counterpart copies, each of which shall be deemed an original, but all of which shall be considered the same instrument.

UNITED FOOD AND COMMERCIAL WORKERS,
LOCAL ONE

By: _[signature]_
Name: Frank O Denio
Title: President
Date: Local one 1-5-10

TOPS MARKETS, LLC

By: _[signature]_
Name: Frank Curci
Title: President & CEO
Date: 1-5-10

UFCW LOCAL ONE PENSION FUND

By: _[signature]_  Raymond M. Wardyn
Name: Frank O Denio (trustee)
Title: Chairman
Date: 1-5-10

THE PENN TRAFFIC COMPANY

By: _____
Name:
Title:
Date:

3

3.   This Agreement may be executed in counterpart copies, each of which shall be deemed an original, but all of which shall be considered the same instrument.

UNITED FOOD AND COMMERCIAL WORKERS, LOCAL ONE

By: _____
    Name:
    Title:
    Date:

TOPS MARKETS, LLC

By: _____
    Name:
    Title:
    Date:

UFCW LOCAL ONE PENSION FUND

By: _____
    Name:
    Title:
    Date:

THE PENN TRAFFIC COMPANY

By: _____
    Name: Daniel J. Mahoney
    Title: SVP
    Date: 1-5-10

3959/49867-002 Current/17125724v2

**EXHIBIT 3**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------- x
                                             :
In re                                        :      Chapter 11
                                             :
THE PENN TRAFFIC COMPANY, ET AL.,            :      Case No. 09-14078 (PJW)
                                             :
                     Debtors.¹               :      (Jointly Administered)
                                             :
----------------------------------------------------------- x
```

### STIPULATION CONCERNING WITHDRAWAL LIABILITY
### CLAIMS OF UFCW LOCAL ONE PENSION FUND AGAINST DEBTORS

WHEREAS, On November 18, 2009 (the "Petition Date"), The Penn Traffic Company,

Sunrise Properties, Inc., Pennway Express, Inc., Penny Curtiss Baking Company, Inc., Big M

Supermarkets, Inc., Commander Foods Inc., P and C Food Markets Inc. of Vermont, P.T.

Development, LLC, and P.T. Fayetteville/Utica, LLC (collectively, the "Debtors"), commenced

their reorganization cases by filing voluntary petitions for relief under chapter 11 of Title 11 of

the United States Code (the "Bankruptcy Code"), and all of the Debtors' cases have been

consolidated for administrative purposes only under Case No. 09-14078;

WHEREAS, the UFCW Local One Pension Fund (the "Pension Fund") believes it has a

claim against the Debtors, for withdrawal liability of the Debtors under ERISA Section 4201 et

seq. if a withdrawal from the Pension Fund takes place during the 2010 Plan Year from January

1, 2010 to December 31, 2010, in the estimated amount of $71,629,767.00 ("Withdrawal

Liability Claim");

WHEREAS, Tops Markets, LLC, and its assignees (collectively, "Tops") has made a

proposal to the Debtors to purchase substantially all of the assets of the Debtors (the "Tops

Transaction");

---

¹       The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's Tax identification number, are: The Penn Traffic Company (6800), Sunrise Properties, Inc. (4868), Pennway Express, Inc. (0863), Penny Curtiss Baking Company, Inc. (6750), Big M Supermarkets, Inc. (8022), Commander Foods Inc. (8023), P and C Food Markets Inc. of Vermont (5531), P.T. Development, LLC (8594), and P.T. Fayetteville/Utica, LLC (8582). The mailing address for all Debtors is:  P.O. Box 4737, Syracuse, NY 13221-4737.

NOW THEREFORE, it is agreed by and between the Pension Fund, Tops and the Debtors as follows:

1.     If the Tops Transaction is consummated in accordance with the agreement between the Debtors, Tops, the Pension Fund and United Food and Commercial Workers Local One, the Pension Fund agrees to the disallowance and expungement of its Withdrawal Liability Claim.

2.     This Stipulation shall be of no force and effect unless and until the Tops Transaction is consummated in accordance with the agreement between the Debtors, Tops, the Pension Fund and United Food and Commercial Workers Local One and after the Bankruptcy Court has approved both the transaction and this Stipulation pursuant to a final and non-appealable order.

3.     This Stipulation is subject to the approval of the Court and shall be of no force and effect unless and until it is so ordered by the Court and becomes a final and non-appealable order.

4.     Nothing in this Stipulation shall be deemed to be an admission by the Debtors, the Pension Fund or Tops with respect to the Pension Fund's Withdrawal Liability Claim or any other matter.

5.     Nothing in this Stipulation shall be deemed to fix, affect or otherwise administer any secured or priority or other unsecured claims of the Pension Fund, if any, including but not limited to the Pension Fund's claim for delinquent contributions filed on December 29, 2009.

6.     This Stipulation may only be amended in writing by the Pension Fund, Tops and the Debtors with the approval of the Court.

7.     This Stipulation may be executed by counsel to the Pension Fund, Tops and the Debtors in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. A signature transmitted by facsimile or e-mail shall be deemed an original, valid and binding signature to this Stipulation.

8.     This Court shall retain jurisdiction to determine any dispute concerning this Stipulation regarding the obligations of the Debtors with respect to the Withdrawal Liability Claim. The Pension Fund and Tops hereby irrevocably consent to the exclusive jurisdiction of the Court with respect to any action to interpret or enforce the terms and provision of this Stipulation regarding the obligations of the Debtors with respect to the Withdrawal Liability Claim.

[SIGNATURE PAGE FOLLOWS]

Dated: January 15, 2010
Wilmington, Delaware

COOCH AND TAYLOR, P.A.

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

_____
Susan E. Kaufman (No. 3381)
Cooch and Taylor, P.A.
1000 West Street, 10th Floor
The Brandywine Building
Wilmington, DE 19899
(302) 984-38931
          and

_____
Joseph M. Barry (No. 4221)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600
          and

SLEVIN & HART, P.C.
Barry S. Slevin
Sharon M. Goodman
Alexandria A. Tsiros
1625 Massachusetts Ave., NW, Ste. 450
Washington, DC 20036
(202) 797-8700

WINSTON & STRAWN LLP
David Neier
200 Park Avenue
New York, NY 10166
(212) 294-6700

Attorneys for the
UFCW Local One Pension Fund

Attorneys for Tops Markets, LLC

MORRIS, NICHOLS,
ARSHT & TUNNELL LLP

_____
Eric D. Schwartz (Del. No. 3134)
Gregory W. Werkheiser (Del. No. 3553)
Ann C. Cordo (Del. No. 4817)
1201 North Market Street, 18th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: 302.658.9200
          and

HAYNES AND BOONE, LLP
Lenard M. Parkins (NY 4579124)
Michael E. Foreman (NY 2043248)
Abigail Ottmers (TX 24037225)
1221 Avenue of the Americas, 26th Floor
New York, NY 10020
Telephone: 212.659.7300

Attorneys for the Debtors and Debtors in
Possession

-4-

Dated: _____, 20___
        Wilmington, Delaware

COOCH AND TAYLOR, P.A.                      YOUNG CONAWAY STARGATT &
                                              TAYLOR, LLP

_____            _____
Susan E. Kaufman (No. 3381)                Joseph M. Barry (No. 4221)
Cooch and Taylor, P.A.                     1000 West Street, 17th Floor
1000 West Street, 10th Floor               Wilmington, Delaware 19801
The Brandywine Building                    P.O. Box 391
Wilmington, DE 19899                       Wilmington, Delaware 19899-0391
(302) 984-38931                            (302) 571-6600
        and                                        and

SLEVIN & HART, P.C.                         WINSTON & STRAWN LLP
Barry S. Slevin                            David Neier
Sharon M. Goodman                          200 Park Avenue
Alexandria A. Tsiros                       New York, NY 10166
1625 Massachusetts Ave., NW, Ste. 450      (212) 294-6700
Washington, DC 20036
(202) 797-8700

Attorneys for the                          Attorneys for Tops Markets, LLC
UFCW Local One Pension Fund

MORRIS, NICHOLS,
  ARSHT & TUNNELL LLP


_____
Eric D. Schwartz (Del. No. 3134)
Gregory W. Werkheiser (Del. No. 3553)
Ann C. Cordo (Del. No. 4817)
1201 North Market Street, 18th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: 302.658.9200
        and

HAYNES AND BOONE, LLP
Lenard M. Parkins (NY 4579124)
Michael E. Foreman (NY 2043248)
Abigail Ottmers (TX 24037225)
1221 Avenue of the Americas, 26th Floor
New York, NY 10020
Telephone: 212.659.7300

Attorneys for the Debtors and Debtors in
Possession

Dated: _____, 20___
   Wilmington, Delaware

COOCH AND TAYLOR, P.A.

_____
Susan E. Kaufman (No. 3381)
Cooch and Taylor, P.A.
1000 West Street, 10th Floor
The Brandywine Building
Wilmington, DE 19899
(302) 984-38931
   and

SLEVIN & HART, P.C.
Barry S. Slevin
Sharon M. Goodman
Alexandria A. Tsiros
1625 Massachusetts Ave., NW, Ste. 450
Washington, DC 20036
(202) 797-8700

Attorneys for the
 UFCW Local One Pension Fund

MORRIS, NICHOLS,
 ARSHT & TUNNELL LLP

_____
Eric D. Schwartz (Del. No. 3134)
Gregory W. Werkheiser (Del. No. 3553)
Ann C. Cordo (Del. No. 4817)
1201 North Market Street, 18th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: 302.658.9200
   and

HAYNES AND BOONE, LLP
Lenard M. Parkins (NY 4579124)
Michael E. Foreman (NY 2043248)
Abigail Ottmers (TX 24037225)
1221 Avenue of the Americas, 26th Floor
New York, NY 10020
Telephone: 212.659.7300

Attorneys for the Debtors and Debtors in
Possession

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

_____
Joseph M. Barry (No. 4221)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600
   and

WINSTON & STRAWN LLP
David Neier
200 Park Avenue
New York, NY 10166
(212) 294-6700

Attorneys for Tops Markets, LLC

-4-